UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DARRYL F. MARLBROUGH JR. | * | CIVIL ACTION NO. 23-22 |
| | * | |
| VERSUS | * | DIVISION 1 |
| | * | |
| CORNERSTONE CHEMICAL | * | MAGISTRATE JUDGE |
| COMPANY | * | JANIS VAN MEERVELD |
| | * | |
| | * | |
| ************************************ | * | |

ORDER AND REASONS

Before the Court is the defendant's Rule 12(b)(6) Motion to Dismiss. (Rec. Doc. 13). Plaintiff cannot state a claim arising out of violation of the First Amendment because the defendant is not a government actor, and he cannot state a claim under the Louisiana Employment Discrimination law because his claims have prescribed. Further, plaintiff has failed to allege facts sufficient to plausibly support a Title VII or 42 U.S.C. §1981 claim for a hostile work environment based on race, racial discrimination, or retaliation, or a claim for violation of the Americans with Disabilities Act. Accordingly, the Motion to Dismiss is GRANTED.

Background

This lawsuit purports to be an employment discrimination case. Plaintiff Darryl F. Marlbrough, Jr., was employed by Cornerstone Chemical Company from March 29, 2017, through December 31, 2019, as an Operations Supervisor. In his original complaint, he alleges that he was "continuously harassed" and that he was "subjected to a hostile work environment" because he is of American Indian descent. He alleges he was "subjected to offensive jokes about race and subjected to demeaning terms, rude gestures, inappropriate language and intentional work interference." He alleges the harassment was pervasive, continuous, and serious enough to disrupt his work flow and cause him to experience severe anxiety. He claims he was in

1

compliance with all of Cornerstone's rules at the time he was terminated, and he argues that he should not have been terminated.

Mr. Marlbrough filed suit against Cornerstone in state court. Nonetheless, he invoked federal question jurisdiction, referencing 42 U.S.C. § 1983 and the First Amendment of the United States Constitution, as well as supplemental jurisdiction over claims under Louisiana Employment Discrimination Law, La. Rev. Stat. § 23:332, et seq. ("LEDL"). Mr. Marlbrough is proceeding pro se, without the assistance of counsel. He titled his pleading a Petition for Discrimination. Because he alleges employment discrimination and harassment based on race and ethnicity and because he alleges that Cornerstone acted in disregard of his federal rights, it appears—as Cornerstone submits in its removal pleading—that Mr. Marlbrough may be asserting discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and/or 42. U.S.C. § 1981. Indeed, he attached to his Petition a notice of right to sue issued by the United States Equal Employment Opportunity Commission indicating that he was pursuing a Title VII claim.

After removal, Cornerstone filed a Motion to Dismiss.[1] Mr. Marlbrough sought and was granted leave to amend his complaint. He now also alleges that he was offered a severance that would require him to give up his workers compensation claim. He alleges that he suffered a disabling injury and that he was then forced to interview for a highly skilled and hazardous job to maintain his employment. He alleges he was accused of not having a disability under the Americans with Disabilities Act because he went back to work in a short period of time, but he argues that he should have been allowed to remain at home longer. He says his doctors advised that he should have been at a "no work" status since the day of the accident on November 26,

---

[1] Initially, the parties notified the Court that they did not unanimously consent to proceed before the Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Rec. Doc. 14). Later, however, the parties provided unanimous consent. (Rec. Doc. 28).

2019. He alleges that between the accident and his termination, he had a difficult time performing at his normal capacity, that he needed help, and that he had to leave early because of extreme headaches. It appears that he may be attempting to assert an additional claim under the Americans with Disabilities Act.

He also alleges he was told he lacked competency for the new role and his current role, although he claims he had achieved all performance and safety goals and was meeting all expectations. He alleges he was subjected to "ridicule and humiliation" from the operations manager of the company he was contracted to work for, including being told he was a failure at his job loudly and in front of his co-workers on a regular basis. He alleges further that he was subject to complete ridicule when Dyno Nobel, the company he was contracted to, offered every employee future employment except for him. He alleges he was told he would be reabsorbed somewhere within Cornerstone, but this did not happen.

Cornerstone filed a renewed Motion to Dismiss. It argues that Mr. Marlbrough cannot state a claim arising out of a violation of the First Amendment because Cornerstone is not a governmental entity. It argues that Mr. Marlbrough's claims under the LEDL are prescribed. It submits that these two claims should be dismissed with prejudice because Mr. Marlbrough could never support them. It argues further that Mr. Marlbrough's hostile work environment claim should be dismissed because he fails to allege specific facts showing that he experienced a hostile work environment that was severe and pervasive or that any harassment he experienced was based on his race. It argues further that Mr. Marlbrough fails to state a claim for racial discrimination because he has not alleged specific facts showing he was subjected to a tangible employment action because of his race. It alleges that any retaliation claim must be dismissed because Mr. Marlbrough has not identified a protected activity or alleged causation. Finally, it

argues that Mr. Marlbrough cannot state a plausible claim under the Americans with Disabilities Act ("ADA") because he does not allege that he was qualified to perform the essential functions of his job with or without a reasonable accommodation, nor does he allege facts that would support finding that he was terminated because of his alleged disability. It adds that Mr. Marlbrough has not alleged that he requested a reasonable accommodation.

In opposition, Mr. Marlbrough argues that there is factual evidence that Dyno Nobel and Cornerstone were made aware of the hostile work environment but took no action. He asserts, without any specifics, that "use of language that is offensive to indigenous peoples was used toward others that are of indigenous decent [sic]."

With regard to his ADA claim, Mr. Marlbrough submits that Cornerstone was aware of his brain injury because the Cornerstone safety supervisor went to the doctor with him. He adds that afterwards, the Cornerstone safety manager asked him not to take the prescribed medication because it would turn into an "OSHA recordable." He says he was out for five days after his injury and reported daily to "medical" at Cornerstone. He submits that his employment was terminated while he had an active workers compensation claim against Cornerstone. He says that there were equivalent yet less demanding roles available that he could have filled. He says he was being treated for traumatic brain injury by the plant doctor who sent him to a neurologist, but he complains that the plant doctor never ordered a CT scan as recommended by CDC guidelines. He submits that he was made to interview while being treated for his traumatic brain injury and that there was no member of Human Resources present. He submits that when he served on the hiring team, there was always a member of Human Resources present during interviews and he argues that this shows he was treated differently. As alleged in his complaint, he says that he did not get the job and that he was told he was incompetent in his current role

even though he had met all goals. He argues that Cornerstone twice tried to convince him to sign away his workers compensation and all litigation rights in exchange for an offer of severance. He submits that since his injury on November 26, 2019, and his last day at the Cornerstone property on December 17 or 18, 2019, he has only worked two weeks per doctor's orders.

In response to Cornerstone's argument that his LEDL claims have prescribed, Mr. Marlbrough argues that he filed his claim with the Equal Employment Opportunity Commission ("EEOC") at the start of the COVID pandemic. He says he reached out to the EEOC for updates and was told that the EEOC was back logged. He argues that tolling should apply in these circumstances.

With regard to his First Amendment claim, he argues that free speech laws can apply in private industry when a company takes on government roles. He argues that this rule applies here because Cornerstone holds government contracts and produces acrylonitrile for the United States Department of Defense.

As to his retaliation claim, he says that he believes he was retaliated against because he voiced his concerns about a hostile work environment to Cornerstone and Dyno Nobel.

In reply, Cornerstone re-urges its arguments. It argues that Mr. Marlbrough improperly attempts to add new facts in opposition as opposed to seeking to amend his pleadings and points out that Mr. Marlbrough frequently claims that "facts will come out in discovery" to support his assertions. It argues that the Court should disregard the new factual allegations, which it argues go well beyond clarifying Mr. Marlbrough's complaint. In any event, it argues that further amendment would be futile with regard to Mr. Marlbrough's First Amendment and LEDL claims. It insists that there is no basis to find Cornerstone liable under the First Amendment because it is a government contractor. It points out that even entities that provide a forum for free

speech are not state actors under the First Amendment. As to the LEDL claim, Cornerstone insists it is untimely. It points out that the EEOC Notice of Right to Sue letter even notes that the time period for filing may be different under state law.

Law and Analysis

1. *Standard on a Motion to Dismiss*

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level." Id. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

  2. *First Amendment Claim against Cornerstone*

  The First Amendment of the U.S. Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." It prohibits government actors, not private individuals, from restricting the rights enumerated therein. E.g., Denver Area Educ. Telecomms Consortium, Inc. v. F.C.C., 518 U.S. 727, 737 (1996); Manhattan Cmty. Access Corp. v. Halleck, 139 S. Ct. 1921, 1928 (2019).

  "[A] private entity may qualify as a state actor when it exercises 'powers traditionally exclusively reserved to the State.'" Id. at 1928 (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 352 (1974)). "[T]o qualify as a traditional, exclusive public function within the meaning of our state-action precedents, the government must have traditionally *and* exclusively performed the function." Id. The Supreme Court has held that running elections and operating a company town fall into that category, but administering insurance payments and supplying electricity do not. Id.

  Mr. Marlbrough argues that Cornerstone qualifies as a government actor because it has a contract with the government and supplies acrylonitrile to the U.S. Department of Defense. Importantly, a private company's contract with the government does not, on its own, implicate the private company as a state actor. E.g., Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982) ("Acts of . . . private contractors [building roads, bridges, dams, ships, or submarines for the government] do not become acts of the government by reason of their significant or even total engagement in performing public contracts."). Here, there is no basis to find that supplying

7

acrylonitrile is the traditional and exclusive prerogative of the state. Cornerstone cannot be held liable for violations of the First Amendment. Accordingly, Mr. Marlbrough's §1983 and First Amendment claim must be dismissed with prejudice.

3. *Timeliness of LEDL Claim*

A one year prescriptive period applies to employment discrimination claims under Louisiana law. La. Rev. Stat. § 23:303(D). This one-year period is suspended for a period of up to six months during the pendency of an administrative review or investigation by the EEOC or Louisiana Commission on Human Rights. Id. ("No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months."). The six month limit applies even if the EEOC review took longer. Clark v. Auger Servs., Inc., 443 F. Supp. 3d 685, 711 (M.D. La. 2020) (noting that plaintiff was only entitled to a six-month suspension where the EEOC issued a right-to-sue letter six months after the charge was filed). In limited situations, the doctrine of *contra non valentem* may apply to suspend the prescriptive period. Eastin v. Entergy Corp., 2003-1030 (La. 2/6/04), 865 So. 2d 49, 56. The Louisiana Supreme Court has identified four circumstances where the doctrine can suspend prescription:

> 1. Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
> 2. Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
> 3. Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
> 4. Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

Wimberly v. Gatch, 635 So. 2d 206, 211 (La. 1994).

Here, there is no dispute that Mr. Marlbrough filed suit on December 1, 2022, more than eighteen months after the conduct at issue—the latest being his termination from employment in December 2019. Accordingly, his claims under the LEDL are prescribed on the face of the

complaint. Mr. Marlbrough argues that the prescriptive period on his LEDL claims should be tolled because the EEOC was delayed in investigating his EEOC charge due to the COVID pandemic. This does not fit any of the categories where the doctrine of *contra non valentem* has been held to apply. The Court finds that Mr. Marlbrough's LEDL claims must be dismissed with prejudice as prescribed.

4. *Hostile Work Environment Claim*

To establish a hostile-work-environment claim, the employee must establish that

(1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002). Courts apply the same standard to both Title VII and §1981 hostile work environment claims. Williams v. E.I. du Pont de Nemours & Co., 154 F. Supp. 3d 407, 420 (M.D. La. 2015); Alvarado v. Shipley Donut Flour & Supply Co., 526 F. Supp. 2d 746, 757 (S.D. Tex. 2007). Harassment affects a "term, condition, or privilege" of employment when it is so severe or pervasive that it alters the conditions of employment and "create[s] an abusive working environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (quoting Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982)). In determining "whether a hostile work environment existed, a court must consider 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Moore v. United Parcel Serv., Inc., 150 F. App'x 315, 319 (5th Cir. 2005) (quoting Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002)). An isolated offensive utterance is not sufficient to demonstrate a hostile work environment due to a protected

characteristic. Weller v. Citation Oil & Gas Corp., 84 F.3d 191, 194 (5th Cir. 1996) (quoting DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 595 (5th Cir. 1995)) ("[T]he 'mere utterance of an . . . epithet which engenders offensive feelings in an employee' is insufficient, without more, to support Title VII liability."); see Jones v. Cont'l Cuisine, Inc., 353 F. Supp. 2d 716, 720–21 (E.D. La. 2004) (finding the plaintiff had not established a race based hostile work environment where the only evidence to support a racially hostile work environment was a manager's alleged use of the "n word" during one meeting). A hostile work environment must be found to "be both objectively and subjectively offensive." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998).

      Mr. Marlbrough fails to state a claim for hostile work environment because he fails to allege any facts to support finding that any harassment he experienced was because of his race. His allegations regarding the allegedly hostile work environment are general and conclusory. He says merely that he was subjected to a hostile work environment because he is of American Indian descent, that he was subject to unspecified "offensive jokes about race," and that he was subjected to unspecified "demeaning terms, rude gestures, and inappropriate language." These are not factual allegations and they cannot plausibly support a finding of racially motivated harassment. He describes being humiliated by the companies he was contracted to work for when he was told he was a failure at his job and when he was not offered a job. But he does not offer any facts that could even suggest, let alone plausibly support, finding that any such humiliation was because of his race. He argues in opposition to the Motion to Dismiss that unspecified language offensive to indigenous people was used toward unspecified others of indigenous descent. Again, this conclusory statement is not a factual allegation and does not support a plausible claim of race based harassment.

Further, even if the allegations that mention race were sufficient, they do not rise to the level that could plausibly support finding that the harassment Mr. Marlbrough experienced was severe or pervasive. He alleges only that he was subjected to offensive jokes about race and that language offensive to indigenous people was used towards others of indigenous descent. These boilerplate allegations without more cannot support finding an abusive work environment. Moreover, the Court notes that it has considered the additional facts alleged in opposition to the Motion to Dismiss. Thus, there is no indication that further amendment of the pleadings could result in a plausible claim for a hostile work environment. Accordingly, Mr. Marlbrough's Title VII and §1981 hostile work environment claim based on race must be dismissed with prejudice.

5. *Race Discrimination Claim*

Title VII prohibits a covered employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The same standard applies to a race discrimination claim under § 1981. LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 n. 2 (5th Cir. 1996). To survive a motion to dismiss, a plaintiff must plead sufficient facts on the ultimate elements of her claim: "(1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* her protected status.'" Cicalese v. Univ. of Texas Med. Branch, 924 F.3d 762, 767 (5th Cir. 2019) (quoting Raj v. Louisiana State Univ., 714 F.3d 322, 331 (5th Cir. 2013)).

Just as Mr. Marlbrough has failed to state a claim for a racially hostile work environment, he has failed to state a claim for race discrimination because the facts he alleged cannot plausibly support a finding that the adverse employment action (here, his termination from employment) was taken because of his race. He alleges no fact that could support finding a causal connection

11

between his termination and his race.[2] And there is no indication that further amendment of the pleadings could result in a plausible claim for a race discrimination. Accordingly, his claims for race discrimination under Title VII and/or § 1981 must be dismissed with prejudice.

6. *Retaliation*

Under Title VII, it is an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). "The opposition clause of § 2000e–3(a) requires the employee to demonstrate that she had at least a "reasonable belief" that the practices she opposed were unlawful." Long v. Eastfield Coll., 88 F.3d 300, 304 (5th Cir. 1996). The Fifth Circuit has "consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." Davis v. Dallas Indep. Sch. Dist., 448 F. App'x 485, 493 (5th Cir. 2011). "[I]f the conduct complained of by a plaintiff had nothing to do with race, color, religion, sex or national origin, [plaintiff] cannot maintain a retaliation claim under Title VII." Wesley v. Scobee Foods, Inc., No. 3:12-CV-1836-K, 2013 WL 3324092, at *6 (N.D. Tex. June 28, 2013).

As Cornerstone points out, Mr. Marlbrough's complaint contains no allegation that he engaged in a protected activity by opposing an unlawful employment practice. In opposition to the Motion to Dismiss, he argues that he voiced his concerns about a hostile work environment to Cornerstone and Dyno Nobel. Even if these allegations were in the complaint, they cannot

---

[2] Mr. Marlbrough argues in opposition to the motion to dismiss that he was treated differently from other employees because he was made to interview without a member of Human Resources present and when he was on the hiring team, there was always a member of the Human Resources team present. Even if this assertion was contained in the complaint, it could not support a plausible race discrimination claim. First, no facts alleged could connect this incident to his race. Moreover, the Court finds that no facts alleged could support finding that the failure to have a Human Resources member present amounted to an adverse employment action. Although an adverse employment action need not be an ultimate employment decision, it must concern "compensation, terms, conditions, or privileges of employment." Hamilton v. Dallas Cnty., 79 F.4th 494, 502-02 (5th Cir. 2023). The mere allegation that no Human Resources member was present at his interview does not rise to that level.
12

support a retaliation claim because there is no basis to plausibly conclude that he complained of a racially hostile work environment. Thus, he cannot state a retaliation claim under Title VII and this claim must be dismissed with prejudice because there is no indication that further amendment of the pleadings could result in a plausible claim.

   7. *ADA Claim*

The ADA prohibits covered employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "To establish a *prima facie* discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; (3) that he was subject to an adverse employment decision on account of his disability." Zenor v. El Paso Healthcare Sys., Ltd., 176 F.3d 847, 853 (5th Cir. 1999). "A plaintiff can establish that he is 'qualified' by showing that 'either (1) [he] could perform the essential functions of the job in spite of [his] disability,' or '(2) that a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of the job.'" Clark v. Champion Nat'l Sec., Inc., 952 F.3d 570, 582 (5th Cir. 2020).

Additionally, actionable discrimination under the ADA includes the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). "[A] plaintiff must prove the following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were

13

'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen., 730 F.3d 450, 452 (5th Cir. 2013). "It is the plaintiff's burden to request reasonable accommodations." Jenkins v. Cleco Power, LLC, 487 F.3d 309, 315 (5th Cir. 2007); see Loulseged v. Akzo Nobel Inc., 178 F.3d 731, 736 n. 4 (5th Cir. 1999) ("[T]he imposition of this burden on employees underscores our recognition of the employer's inability to 'read minds' and the need for disabled employees to remain active in the development of solutions to their concerns.").

Cornerstone argues that Mr. Marlbrough has failed to state a plausible claim for ADA discrimination because he has not alleged that he was qualified to perform the essential functions of the job with or without a reasonable accommodation and because he has not plead facts showing that he was terminated due to his alleged disability. As to any "failure to accommodate" claim he may be asserting, Cornerstone argues that he has failed to assert that he ever asked Cornerstone for any modification to his job duties or that he asked for an accommodation to his work or work schedule. Moreover, Cornerstone argues that the allegations to the complaint acknowledge that he was contracted to work for Dyno Nobel in the weeks following his workplace injury.

The Court finds that the facts alleged in Mr. Marlbrough's amended complaint are insufficient to state a claim. He alleges he was forced to interview for a hazardous job to maintain his employment after his brain injury, that he was accused of not having a disability, and that he was pressured to come back to work when he should have been allowed to stay home. He does not allege that he was able to perform his job, with or without an accommodation. Indeed, according to his Opposition Memorandum, he only worked for 2 weeks after his

14

November 26, 2019, injury "and has not worked since. *Per doctor's orders*." (Rec. Doc. 16, ¶ 12) (emphasis added). He does not allege in the complaint that he ever sought an accommodation to his duties or schedule, as it was his burden to do. See Jenkins, 487 F.3d at 315.

In his Opposition Memorandum, Mr. Marlbrough asserts additional facts related to his alleged disability and termination. But even if Mr. Marlbrough were allowed to amend his complaint to properly plead these facts, he could not state a plausible claim for disability discrimination. He asserts that there were several equivalent roles available that he could have filled that were less demanding than his role at Dyno Nobel. And he claims that just weeks after his disability and the day after he treated with his chosen doctor and reported the doctor's findings to Cornerstone, he was told he was incompetent for his current role. But his claim regarding roles he could have filled is conclusory. He does not assert any facts to support finding that he was qualified and able to perform such roles. Nor does his Opposition Memorandum suggest that he requested a reassignment as an accommodation for his alleged disability or that he otherwise made his concerns known to Cornerstone. An employer cannot be expected to read an employee's mind. Mr. Marlbrough's Opposition Memorandum offers no reason to believe that an amendment to the pleadings could revive his ADA claim. His claim for disability discrimination under the ADA must be dismissed with prejudice.

## Conclusion

As discussed above, Mr. Marlbrough cannot state a claim arising out of violation of the First Amendment because Cornerstone is not a government actor and he cannot state a claim under the LEDL because his claims have prescribed. Further, Mr. Marlbrough has failed to allege facts sufficient to plausibly support a claim under Title VII or § 1981 for a hostile work environment based on race, racial discrimination, or retaliation, or for violation of the ADA.

15

Accordingly, Cornerstone's Motion to Dismiss is GRANTED; Mr. Marlbrough's claims are dismissed with prejudice.

New Orleans, Louisiana, this 14th day of March, 2024.

                                              Janis van Meerveld
                                        United States Magistrate Judge